UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
:
ERIC DAVIDSON, :
                      Petitioner, :
                                                    :
                  -against- :
                                                    :
MICHAEL CAPRA, :
                      Respondent. :
:
-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/31/2019

15 Civ. 9840 (LGS)

**<u>OPINION & ORDER</u>**

LORNA G. SCHOFIELD, District Judge:

      Petitioner Eric Davidson ("Davidson") brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction following trial of two counts of second-degree burglary and two counts of fifth-degree possession of stolen property in New York State Supreme Court, New York County. On July 12, 2016, Davidson filed the operative Amended Petition ("the Petition"). This case was referred to the Honorable James Cott for a report and recommendation (the "Report"). The Report, issued April 4, 2018, recommends that the Petition be denied. On June 8, 2018, the Court received Davidson's objections to the Report. For the following reasons, the Report is adopted, and the Petition is denied.

    I.    **BACKGROUND**

      The facts relevant to Davidson's petition are set out in the Report and summarized here.

      On December 24, 2009, Dr. Sat Bhattacharya returned to his residence on the Upper East Side to find Davidson in his apartment. When Bhattacharya called 911, Davidson fled the apartment. Bhattacharya chased Davidson outside the building. As Bhattacharya and Davidson were struggling, the zipper on Davidson's backpack opened and Bhattacharya's laptop fell out. Osman Lukolic, a doorman at the building across from Bhattacharya's, saw the interaction and

tried to detain Davidson. Davidson escaped, but Bhattacharya retained the backpack, which also contained a second laptop.

Later that evening, Bhattacharya called 911 again to report the burglary. Officers arrived at his apartment and determined that Davidson had entered Bhattacharya's apartment through the fire escape. At that time, the officers did not collect the second laptop or the backpack. Bhattacharya managed to identify the owner of the second laptop as Christopher Ahlstrand. One day before the Bhattacharya burglary, on December 23, 2009, a burglar had broken into Ahlstrand's East Village apartment through the fire escape and stolen two laptops. After Bhattacharya notified Ahlstrand that he had recovered Ahlstrand's laptop, Ahlstrand alerted the detective on his case of the Bhattacharya burglary.

On January 4, 2010, Detective Thomas Mays was assigned to the case. On January 5, Mays interviewed Bhattacharya and collected Davidson's backpack from Bhattacharya for DNA testing. During the interview, Bhattacharya described the suspect as a white male, 5-foot 7 to 8 inches, with glasses and a dark jacket, a slim build around 150-pounds, late thirties or early forties, brown eyes and short brown hair, and that he "did not look dirty or homeless." Based on this description, Detective Mays composed a photo array of six people from the Photo Manager Computer Systems software. On January 6, 2010, Mays met Bhattacharya to show him the photo array. Bhattacharya identified the person in position three (Davidson) as the person in the apartment when he came home.

On January 7, Mays interviewed Lukolic, the doorman at the building across the street from Bhattacharya's during the burglary. Following Mays' investigation, Davidson was arrested on January 7, 2010. The same day, Mays conducted a lineup consisting of four men from a local men's shelter and Davidson, who was located in the fifth position of the lineup. Bhattacharya identified Davidson in the lineup. Lukolic viewed the lineup but did not identify Davidson.

Lukolic said he recognized the fifth person in the lineup (Davidson), but said it could have also been the third person.

After the lineup, on January 8, 2010, Mays sanitized an interview room at the precinct, brought Davidson into the room and offered him a cigarette. After Davidson finished smoking, Mays collected two cigarette butts for DNA testing. On June 26, 2010, a different detective asked Davidson for an oral swab. Davidson's DNA from the oral swab and the cigarette butts matched the DNA from the backpack.

### A. Suppression Hearing

At a suppression hearing on October 28, 2010, Davidson's counsel argued that the photo array shown to Bhattacharya was unduly suggestive. Davidson's counsel argued that Davidson's photo in the array was much lighter and that Davidson was thinner and older than the other individuals. As a result, counsel argued, the photo array was suggestive, leading to Bhattacharya's misidentification of Davidson in the lineup. The trial court found that the photo array was not suggestive and that the photo's lighter appearance did "not cause the defendant to stand out from the others in any appreciable way."

### B. Trial

On June 27, 2012, Davidson appeared in New York State Supreme Court for a jury trial. At trial, the prosecution presented testimony from Bhattacharya, Ahlstrand, Detective Mays and Lukolic, among others. The prosecution also presented evidence of the DNA match between Davidson's oral swab sample and cigarette butts and DNA found on the backpack that Bhattacharya pulled off the burglar. The prosecution introduced incriminating telephone calls that Davidson made to his mother from prison, in which she implied that he committed the burglary, and Davidson did not object.

Davidson's counsel offered a third-party suspect defense. Defense counsel had hired Joseph Lisi, a former police officer and licensed private investigator, to investigate Davidson's case. As part of the investigation, Lisi had interviewed Lukolic several times. Lisi showed Lukolic a Fox News Crime Stoppers video that featured footage of a burglar involved in a string of burglaries on the Upper East Side. Lisi also showed Lukolic color photographs from the video. Prior to trial, Davidson's counsel raised the prospect of showing the Crime Stoppers video footage during trial. Although the video itself is not part of the record, the judge described the video as "of a news report in June 2010. It shows a young man wheeling a bicycle through a door."

Lukolic testified at trial that when Lisi asked Lukolic whether the burglar in the Crime Stoppers' burglary looked like the burglar in the Bhattacharya burglary, Lukolic responded that "it could look like the guy." After the conclusion of the prosecution's case, the judge ruled that the video was not admissible for "anything other than the picture of the person there that was shown to the witness [] to the extent that he may have previously stated that this person was or looks like the burglar he encountered." The trial judge found that the video was not probative of the suspect's *modus operandi*. Instead, the judge concluded that "burglaries committed by entering through a fire escape window are not that terribly unique . . . Significantly, these burglaries . . . are not so similar to the burglary here as to [be] probative of the identity of the burglar in our case." The judge advised defense counsel that "while he's welcome to show the whole video in terms of the pictures of the person depicted, all the commentary was still . . . inadmissible hearsay." Davidson's counsel informed the judge that he did not need to play the video and instead intended to offer a still photograph of the burglar from the video.

Davidson was convicted of two counts of second-degree burglary and two counts of fifth-degree possession of stolen property. Davidson was sentenced to concurrent terms of 16-years-

4

to-life for the burglary convictions to run concurrent to one-year terms on each of the possession convictions.

### C. State Court Appeals and this Petition

Davidson appealed to the Appellate Division, First Department. Davidson argued: (1) he was deprived of his right to present a defense because the trial court precluded him from introducing the Crime Stoppers commentary; (2) his trial counsel was ineffective for not playing the video for the jury and not calling police officers to testify regarding the video; (3) the photo array was unduly suggestive and tainted the subsequent lineup procedure because the participants in the array looked dissimilar to Davidson, and Davidson's photo was lighter and more faded than others in the photo array; (4) the conviction for the Ahlstrand burglary was against the weight of the evidence and (5) the evidence for the Ahlstrand burglary was legally insufficient. The First Department unanimously affirmed Davidson's conviction, and the New York Court of Appeals denied leave to appeal. *People v. Davidson*, 995 N.Y.S.2d 64 (1st Dep't 2014), *appeal denied*, 25 N.Y.3d 988 (N.Y. 2015).

Davidson's conviction became final on July 7, 2015, after the Court of Appeals denied leave to appeal. On December 16, 2015, less than a year after his conviction became final, Davidson timey filed the petition. *See* 28 U.S.C. § 2244(d)(1) ("A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." The limitations period begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."). On May 9, 2016, Petitioner filed an amended petition with a letter stating that his trial counsel was ineffective. Judge Cott directed Petitioner to further amend the petition to include all claims, and on July 12, 2016, Petitioner filed the operative Petition that

5

included the ineffective assistance of counsel claim. Judge Cott issued the Report on April 4, 2018. On June 8, 2018, the Court received Davidson's timely objections to the Report.

## II. Legal Standard

### A. Review of a Report & Recommendation

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The district court "may adopt those portions of the report to which no 'specific, written objection,' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b) (*citing Thomas v. Arn*, 474 U.S. 140, 149 (1985)).

A district court must conduct a *de novo* review of any portion of the report to which a specific objection is made on issues raised before the magistrate judge. 28 U.S.C. § 636(b)(1); *accord United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). "When a party makes only conclusory or general objections, or simply reiterates the original arguments made below, a court will review the report strictly for clear error." *Espada v. Lee*, No. 13 Civ. 8408, 2016 WL 6810858, at *2 (S.D.N.Y. Nov. 16, 2016). Further, a district court should not entertain new grounds for relief or additional legal arguments that were not before the magistrate judge. *See Walker v. Stinson*, 205 F.3d 1327 (2d Cir. 2000) (holding that a district court did not abuse its discretion in refusing to consider an argument that a petitioner failed to raise before a magistrate judge); *accord Kriss v. Bayrock Grp.*, No. 10 Civ. 3959, 2015 WL 1305772, at *1 (S.D.N.Y. Mar. 23, 2015).

### B. Standard for De Novo Review

When a court on habeas review considers a federal constitutional claim that has been adjudicated on the merits by the state court, the court must accord substantial deference to the state court's decision under the standard of review dictated by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254(d); *see also Mannix v. Phillips*, 619 F.3d 187, 195 (2d Cir. 2010) ("[A] claim is deemed to have been adjudicated on the merits . . . if the state court rendered a decision finally resolving the [petitioner's] claim[ ], with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.") (alteration in original) (citations omitted); *accord Silvestre v. Capra*, No. 15 Civ. 9425, 2018 WL 3611988, at *15 (S.D.N.Y. July 27, 2018). The AEDPA provides that habeas relief may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (d)(2); *Fernandez v. Capra*, 916 F.3d 215, 221 (2d Cir. 2019). The AEDPA dictates that, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can be overcome only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A state court decision is an "'unreasonable application' of clearly established federal law 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Orlando v. Nassau Cty. Dist. Attorney's Office*, 915 F.3d 113, 120–21 (2d Cir. 2019) (quoting *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005)). "That bar is not reached where fairminded jurists could disagree on the correctness of the state court's decision." *Id.* (internal quotation marks and citation omitted).

Similarly, a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "Where '[r]easonable minds reviewing the record might disagree' as to the relevant finding, that is not sufficient to supplant the state court's factual determination." *Id*. (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)); *accord Johnson v. Gonyea*, 752 F. App'x 14, 16 (2d Cir. 2018) (summary order).

Instead, in order to obtain habeas relief on the basis of a state court's "unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), a petitioner must not only show "by clear and convincing evidence" that a factual finding made by the court was incorrect, 28 U.S.C. § 2254(e)(1), but must also demonstrate "that the corresponding factual determination was 'objectively unreasonable' in light of the record before the court," *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003). A factual determination may be unreasonable if it "cannot reasonably be reconciled" with the evidence presented in the state proceeding. *Jones v. Murphy*, 694 F.3d 225, 235 (2d Cir. 2012). These standards are "demanding," even if "not insatiable," *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (noting that "[d]eference does not by definition preclude relief" (quoting *Cockrell*, 537 U.S. at 340)); *accord Silvestre*, 2018 WL 3611988, at *16.

### III. Discussion

Davidson objects to the Report on three grounds. First, he argues that he was deprived of a fundamentally fair trial because the trial court erred in excluding the Crime Stoppers video commentary. Second, Davidson argues that he received ineffective assistance of counsel due to his trial counsel's (a) failure to show the Crime Stoppers video without the commentary and (b) failure to investigate the police officers who prepared the report in the Crime Stoppers video.

8

Lastly, Davidson argues that the photo array was unduly suggestive in violation of his due process rights. The Report is reviewed *de novo* as to these three specific objections while the remainder of the Report is reviewed for clear error. *See* 28 U.S.C. § 636(b)(1).

### A. Due Process Claim

During the trial, as part of Petitioner's third-party suspect defense, Petitioner sought to introduce a Crime Stoppers video broadcast that depicted an individual "identified by the New York City Police Department as a perpetrator of serial burglaries in the Upper East Side neighborhood in the spring of 2010" with a similar *modus operandi* to the burglaries at issue in Petitioner's case. The trial court ruled that both the video's commentary and captions were inadmissible hearsay, but a still photo from the video and the video itself (without commentary) were admissible. The Petition alleges that the trial court erred in excluding the admission of the video commentary in violation of Petitioner's due process rights. Reviewing the Petition's due process claim *de novo*, the Report correctly found that the state court's rejection of Davidson's right to present a defense claim was not contrary to, nor an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

Challenges to a state court's evidentiary rulings, even if erroneous, concern matters of state law and, as such, are not cognizable on habeas review. *See* 28 U.S.C. § 2254(a); *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions")); *see also Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) ("Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus."); *accord Martinez v. Colvin*, No. 117 Civ. 00757, 2018 WL 7047148, at *14 (S.D.N.Y. Nov. 6, 2018), *report and recommendation adopted*, No. 17 Civ. 757, 2018 WL 6649608 (S.D.N.Y. Dec. 19, 2018). However, a federal habeas court may

9

"review an error of state evidentiary law to assess whether the error deprived the petitioner of his due process right to a fundamentally fair trial." *Freeman v. Kadien*, 684 F.3d 30, 35 (2d Cir. 2012) (citation omitted). In other words, a petitioner must show that the evidentiary ruling was not only an error under state law, but also that it denied him his constitutional right to a fair trial. *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004).

The state court's ruling to exclude commentary from the Crime Stoppers video is not an error under state law. The trial court concluded that the video commentary and captions -- describing the man on the video as committing nine burglaries in apartments on East 90th Street on the Upper East Side in May and June of 2010 -- constituted inadmissible hearsay. The First Department affirmed the trial court judgment and found that the trial court "properly exercised its discretion in precluding defendant from introducing portions of [the] videotape that plainly constituted hearsay. Defendant did not make an adequate showing that the hearsay evidence was reliable, or that it was critically exculpatory." The First Department also noted that the trial court "permitted defendant to use the nonhearsay aspects of the videotape" in support of his defense. The Court of Appeals denied Davidson's request for leave to appeal.

The First Department did not err in finding that the trial court properly precluded the video commentary as hearsay. *See People v. Taylor*, 835 N.Y.S.2d 442, 445 (2nd Dep't 2007) (A trial court has wide latitude to exclude evidence that "is solely based on hearsay or is too remote or speculative."); *see also Grucci v. Grucci*, N.Y.3d 893, 897 (N.Y. 2012) ("The predicate for admission of tape recordings in evidence is clear and convincing proof that the tapes are genuine and that they have not been altered"). The video commentary and captions were out-of-court statements proffered for their truth that bore no indicia of reliability. Accordingly, the state court's ruling to exclude the commentary is not erroneous.

Even if the trial court's evidentiary ruling had been in error, it was "not so extremely unfair that its admission violate[d] fundamental conceptions of justice." *Vega,* 669 F.3d at 126 (alteration in original) (citations and internal quotation marks omitted). Only claims that the evidentiary ruling was "so egregious as to implicate the Fourteenth Amendment's guarantee of due process" are cognizable on federal habeas review. *See Evans v. Fischer*, 712 F.3d 125, 133 (2d Cir. 2013). "Whether the exclusion of [evidence] violate[s] [a defendant's] right to present a defense depends upon whether the omitted evidence[,] evaluated in the context of the entire record[,] creates a reasonable doubt that did not otherwise exist." *U.S. v. Rivera*, 799 F.3d 180, 191 (2d Cir. 2015) (quoting *Justice v. Hoke*, 90 F.3d 43, 47 (2d Cir. 1996)).

The exclusion of the video's commentary and captions did not violate Petitioner's due process rights. Even without the hearsay commentary and caption, Petitioner was able to present the substance of his third-party suspect defense. Petitioner's counsel presented a still photograph portraying the alleged third-party suspect and questioned Lukolic and Lisi about Lukolic's identification of the man in the video. The trial court also offered Petitioner an opportunity to present the video without the captions and commentary. Thus, the First Department's affirmance of the trial court's exclusion of the commentary and captions did not rise to the level of constitutional error.

### B. Ineffective Assistance of Counsel

The Petition alleges that Davidson received ineffective assistance of counsel due to his trial counsel's (1) failure to show the Crime Stoppers video without the commentary and (2) failure to investigate the police officers who prepared the report in the Crime Stoppers video. The state court's rejection of the Petition's ineffective assistance claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

### 1. The Strickland Standard

Petitioner's ineffective assistance of trial counsel claim is reviewed under the standard of review set out in AEDPA, granting habeas relief only if the decision of the First Department -- as the last-reasoned state court opinion on the claim -- was contrary to, or involved an unreasonable application of, clearly established federal law. *See Tavarez v. Larkin*, 814 F.3d 644, 649 (2d Cir. 2016) (Petitioner "must establish that the state court's rejection of the claim [on the merits] was an unreasonable application of clearly established federal law.").

For AEDPA purposes, *Strickland v. Washington*, 466 U.S. 668 (1984), sets out the "clearly established federal law" regarding a defendant's constitutional right to the effective assistance of counsel. *See, e.g., Chrysler v. Guiney*, 806 F.3d 104, 118 (2d Cir. 2015) (habeas petitioner must establish that *Strickland* was applied unreasonably by state courts). Under *Strickland*, an attorney renders constitutionally ineffective assistance of counsel if (1) his performance was deficient, and (2) "the deficient performance prejudiced the defense." *Garner v. Lee*, 908 F.3d 845, 861–62 (2d Cir. 2018) (citation omitted). As to the first prong of this test, there is a strong presumption that counsel's conduct fell within the range of reasonably professional assistance. *See Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). With regard to prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Because both the *Strickland* standard and AEDPA provide for deferential subsequent review, it is a "doubly deferential" judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard. *See Cullen v. Pinholster*, 563 U.S. 170, 189-90 (2011); *accord*

*Silva v. Keyser*, 271 F. Supp. 3d 527, 546–47 (S.D.N.Y. 2017). "[A]s a result of the interaction between AEDPA and *Strickland*, the question. . . becomes whether there is any reasonable argument that [Petitioner's] counsel satisfied *Strickland's* deferential standard." *Chrysler*, 806 F.3d at 118; *accord Adams v. Keyser*, No. 16 Civ. 129, 2018 WL 2089337, at *3 (S.D.N.Y. May 3, 2018) (citing *Bell v. Cone*, 535 U.S. 685, 698–99 (2002)) ("The proper inquiry. . . is not whether Petitioner satisfies the *Strickland* test, but whether the state court applied *Strickland* in an objectively reasonable manner" when it found that Petitioner was not denied effective assistance of counsel).

### 2. The First Department's Rejection of the Ineffective Assistance Claim

The First Department was the last state court to reject Petitioner's ineffective assistance claim. Although the First Department ruled on Petitioner's ineffective assistance claim in summary fashion, "summary dispositions rank as adjudications 'on the merits' for AEDPA purposes." *See Chrysler*, 806 F.3d at 117 (quoting *Harrington v. Richter*, 562 U.S. 86, 99-100 (2011)). Where the state court does not provide reasons for its decision, "we examine what arguments or theories . . . that could have supported that decision, and then ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 118 (internal quotation marks omitted).

Even assuming that Petitioner's trial counsel was deficient in declining to present the Crime Stoppers video and failing to investigate the police officers familiar with the crimes depicted in the video, Petitioner has not established under *Strickland*'s second prong that, but for those errors, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see Garner*, 908 F.3d at 861 ("[T]here is no reason for a court. . . to address both

components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant") (quoting *Strickland*, 466 U.S. at 697). Instead of presenting the Crime Stoppers video, Petitioner's counsel chose to offer a still black and white photograph of the third-party suspect from the video. Both the photograph and the video contained comparable content -- a view of the third party suspect. Accordingly, Petitioner has not established that presenting the video would have changed the outcome of the trial. Petitioner also has not established how counsel's decision not to question police officers with no obvious connection to this case would have influenced the outcome. In light of the strength of the prosecution's case and the relatively insignificant nature of counsel's decision not to present the video or interview police officers in an unrelated matter, the First Department's conclusion that Petitioner failed to establish ineffective assistance of counsel was not an unreasonable application of federal law. Petitioner is therefore not entitled to habeas relief on these grounds.

In his Objections, Petitioner raises a host of new theories for his ineffective assistance of counsel claim, including his counsel's failure to request a missing witness charge, failure to redact parts of Petitioner's phone conversation with his mother before it was played to the jury, failure to request access to thirty months of Petitioner's telephone conversations from prison in which Petitioner claimed his innocence and failure to challenge a prosecution witness's allegedly false testimony. Neither the state court proceedings nor the Petition raises these issues. Thus, it is unnecessary to consider this portion of the Objections. *See* 28 U.S.C. § 2254(b)(1) (requiring exhaustion of state remedies unless such remedies are unavailable or circumstances render them ineffective).

### C. Photo Array Claim

Reviewing Petitioner's photo array claim de novo, the First Department's holding that the photo array was not suggestive is not "contrary to, [n]or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

When a defendant challenges the admissibility of an eyewitness identification as unreliable, the district court must engage in a two-step inquiry. *Perry v. New Hampshire*, 565 U.S. 228, 235 (2012); *accord U.S. v. Marsh*, 644 F. App'x 5, 6 (2d Cir. 2016) (summary order). The court must determine "whether the pretrial identification procedures were unduly suggestive and, if so, whether the identification is 'nonetheless independently reliable.'" *Marsh*, 644 F. App'x at 7 (quoting *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir.2001)). "Identification testimony will generally be suppressed only if the identification procedures were 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Id.*; *accord Dunlap v. Burge*, 583 F.3d 160, 165 (2d Cir. 2009).

The First Department found that the trial court properly denied Petitioner's motion to suppress identification testimony. The First Department concluded that the record supported the trial court's finding that the photo array and lineup identification procedures were "fair and nonsuggestive" because the "photographs were sufficiently similar."

This conclusion is not an unreasonable application of clearly established federal law. That the background in Petitioner's photo is slightly brighter than the background in four of the six photos in the photo array, does not render the array suggestive. *See U.S. v. Bautista*, 23 F.3d 726, 731 (2d Cir. 1994) ("While it is true that the photograph of [the defendant] is slightly brighter and slightly more close-up than the others, we find that these differences did not render the array suggestive."); *U.S. v. Brathwaite*, No. 17 Cr. 0045, 2018 WL 1787943, at *6 (E.D.N.Y.

Mar. 27, 2018), *report and recommendation adopted*, No. 17 Cr. 0045, 2018 WL 1785484 (E.D.N.Y. Apr. 13, 2018) ("Although there are some differences in lighting and how close-up the individuals appear, these differences do not render the array suggestive"); *U.S. v. Brown*, No. 14 Cr. 509, 2017 WL 825314, at *2 (S.D.N.Y. Mar. 2, 2017) (difference in lighting does not render the array suggestive).

Petitioner's argument that the photo array is unduly suggestive because two of the six men have blue eyes is not supported by a review of the photo array. The difference in eye color is too difficult to ascertain due to the clarity of the photographs. The men pictured have a similar appearance with dark short hair, slim faces and glasses. Minor differences among the individuals' characteristics depicted in the photographs do not make the array unduly suggestive. *See Brown*, 2017 WL 825314, at *2 ("[I]t is not required . . . that all of the photographs in [a photo] array be uniform with respect to a given characteristic.") (quoting *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986)(alteration in original)). Because the photo array is not unduly suggestive, it is unnecessary to proceed to the second step of the inquiry to determine whether the identification was independently reliable. To the extent that Petitioner raises new claims about his misidentification, these claims were not exhausted below and are therefore barred. *See* 28 U.S.C. § 2254(b)(1).

### D. Sufficiency of the Evidence

As Petitioner does not make any specific objection to the Report's finding of the sufficiency of the evidence, the Report is reviewed for clear error. *See* 28 U.S.C. § 636(b)(1)(C). The Report was not clearly erroneous in concluding that the state court's rejection of Petitioner's legal insufficiency claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

Challenges to the sufficiency of the evidence are reviewed under a doubly deferential standard. First, on direct review, the relevant question is whether, after "view[ing] the evidence in the light most favorable to the [prosecution] . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *U.S. v. Aquart*, 912 F.3d 1, 17 (2d Cir. 2018) (citations and internal quotation marks omitted). The evidence is considered "in its totality, not in isolation." *Id.* (quoting *U.S. v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2016)). "Second, if the state courts have rejected the defendant's constitutional arguments on the merits, a federal court may not grant the writ of habeas corpus unless the state court's decision was based on an unreasonable application of [ ] clearly established Federal law." *Garbutt v. Conway*, 668 F.3d 79, 81 (2d Cir. 2012) (citations and internal quotation marks omitted); *accord Silva v. Keyser*, 271 F. Supp. 3d 527, 539 (S.D.N.Y. 2017).

Considering the evidence in its totality, the Report was not clearly erroneous in concluding that a reasonable jury could have believed that Davidson committed the burglaries. The prosecution presented evidence that Davidson possessed Ahlstrand's stolen laptop, Davidson's DNA was found on the backpack that contained Ahlstrand's laptop and Davidson made incriminating statements during post-arrest phone calls. To the extent that Petitioner seeks to challenge the sufficiency of the evidence based on inconsistent descriptions of the burglar's coat during the incident, this issue was not previously raised and is therefore barred from habeas review for lack of exhaustion.

### E. Claims on collateral review

Davidson seeks to amend his Petition to include a claim for ineffective assistance of counsel on the grounds that (1) counsel failed to make a timely objection to the prosecution's request for an oral DNA swab and (2) counsel failed to move to suppress on Fourth Amendment grounds DNA evidence collected from two cigarette butts. In July 2016, Petitioner moved for a

17

stay in this Court to pursue a CPL § 440.10 motion for ineffective assistance of counsel in state court. Judge Cott denied the stay because Davidson had failed to show good cause for his failure to exhaust the claim, and this Court affirmed. In January 2017, Davidson filed his CPL § 440.10 motion in New York Supreme Court. The motion was denied. Petitioner appealed, and on February 2, 2018, the First Department denied Davidson's request for leave to appeal. Having exhausted the two new ineffective assistance claims in state court, Davidson now seeks to amend the Petition to include them.

### i. Timeliness

Under 28 U.S.C. § 2244(d)(1), "[a] 1–year period of limitation shall apply to an application to a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." The limitations period begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id*. § 2244(d)(1)(A).

After the one-year limitations period, petitions may be amended only if the new claims "relate back" to the original petition under Rule 15(c) of the Federal Rules of Civil Procedure. It is not sufficient that the amendment generally refer back to the same trial, conviction or sentence. *See Gibson v. Artus*, 407 Fed. App'x 517, 519 (2d Cir. 2010) (summary order). Instead, the amended claim must arise out of "the same core facts alleged in the original petition." *Id*. (citing *Mayle v. Felix*, 545 U.S. 644, 656-57 (2005); *accord Elliot v. Kirkpatrick*, No. 17 Civ. 7529, 2018 WL 2021713, at *3 (S.D.N.Y. Mar. 30, 2018).

Petitioner's conviction became final on July 7, 2015, when the New York Court of Appeals denied leave to appeal. On December 16, 2015, Petitioner filed a timely habeas petition. As the one-year limitations period to file a new claim lapsed in July 2016, in order to

amend, Petitioner must demonstrate that the new claims relate back and share "a common core of operative facts" with Petitioner's original claims. *Mayle*, 545 U.S. at 664.

Davidson's claims do not relate back. Davidson seeks to amend the Petition to include a claim for ineffective assistance of counsel on the grounds that (1) counsel failed to make a timely objection to the prosecution's request for an oral DNA swab taken in June 2010 and (2) counsel failed to move to suppress on Fourth Amendment grounds DNA evidence collected from two cigarette butts retrieved in January 2010 shortly after Petitioner's arrest. Petitioner's new claims relate to counsel's alleged deficient pretrial performance, which allowed the prosecution to develop identification evidence against Petitioner based on his DNA.

Neither the first petition nor the operative amended Petition raise an issue with counsel's performance with respect to the two DNA samples. Instead, the ineffective assistance of counsel claims revolve around the Crime Stoppers video -- counsel's decisions not to present the video at trial, or call the police officers related to the burglary depicted in the Crime Stoppers video. The ineffective assistance of counsel claims raised in the Petition do not have a clear temporal and factual connection to those that Davidson seeks to add to his Petition. *Mayle*, 545 U.S. at 650. The claims in the Petition are limited to counsel's trial performance and specifically relate to the Crime Stoppers video, whereas the new claims raise issues about the collection of DNA evidence. Although both sets of claims assert that counsel provided ineffective assistance, "it is not sufficient for an untimely amendment merely to assert the same general type of legal claim as in the original [] motion." *Veal v. United States*, No. 01 Civ. 8033, 2007 WL 3146925, at *4-6 (S.D.N.Y. Oct. 9, 2007), *aff'd*, 334 F. App'x 402 (2d Cir. 2009) (citation and internal quotation marks omitted) (no relation back where ineffective assistance of counsel claims in the petition related to strategic decisions during trial, but the claims in the proposed amendment were based on conduct during pretrial negotiations); *see also Watson v. Superintendent of Five Points Corr.*

*Facility,* No. 18 Civ. 835, 2019 WL 1508958*,* at *3 (S.D.N.Y. Apr. 5, 2019) (finding that ineffective assistance of counsel claims would not relate back to the original petition because "facts differed in both time and type" from those originally pleaded). Because Davidson's new claims do not arise from the same "common core of operative facts" as his original claims, the amended claims do not relate back to Davidson's original petition and are therefore time barred.

## IV. Conclusion

For the reasons stated above, Judge Cott's Report is adopted and the Petition for a writ of habeas corpus is DENIED. As Petitioner has not made a substantial showing that a constitutional right has been denied, the Court declines to issue a certificate of appealability in this case. 28 U.S.C. §§ 2253(c)(1), (2). The Court certifies that any appeal from this Opinion and Order would not be taken in good faith, and therefore permission to proceed *in forma pauperis* status is also denied. 28 U.S.C. § 1915(a)(3); *see also Coppedge v. United States*, 369 U.S. 438, 445 (1962); *In re Siemon*, 421 F.3d 167, 169 (2d Cir. 2005).

The Clerk of Court is respectfully directed to close this case and to mail a copy of this Opinion and Order to the pro se Petitioner.

Dated: May 31, 2019
      New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE